BONJORNO, Joseph A., Kerr, George M., and Clisby, Barbara K., as Transferees in Liquidation and Dissolution of Columbia Metal Culvert Co., Inc., Appellants No. 88–1318,

v.

KAISER ALUMINUM & CHEMICAL CORPORATION and Kaiser Aluminum & Chemical Sales, Inc.

BONJORNO, Joseph A., Kerr, George M., and Clisby, Barbara K., as Transferees in Liquidation and Dissolution of Columbia Metal Culvert Co., Inc.

v.

KAISER ALUMINUM & CHEMICAL CORPORATION and Kaiser Aluminum & Chemical Sales, Inc., Appellants No. 88–1396.

Nos. 88–1318, 88–1396.

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1988.

Decided Jan. 9, 1989.

Rehearing and Rehearing In Banc Denied Feb. 13, 1989.

Henry T. Reath (argued), Michael M. Baylson, Edward G. Biester, III, Duane, Morris & Heckscher, Philadelphia, Pa., for appellants-cross appellees.

Richard P. McElroy (argued), Ann B. Laupheimer, Leslie N. Brockman, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellees-cross appellants.

Before STAPLETON, SCIRICA and COWEN, Circuit Judges.

OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from an order of the district court granting plaintiff's motion for post-judgment interest. Upon review, we conclude that the district court erred with respect to some aspects of its application of the relevant statute. We will affirm the district court's determination of the date from which interest runs. We will reverse the district court's grant of post-judgment interest in the amount of $2,632,-886.30 because it incorrectly determined that the applicable rate under the post-judgment interest statute is Pennsylvania's six-percent simple interest rate, rather than the higher T-bill rate imposed by 28 U.S.C. § 1961 (1982).

I.

This appeal involves a determination of (1) the applicable rate of post-judgment interest, and (2) the date from which post-judgment interest should run.[1] Plaintiffs

---

1. Normally, there are two components of the total interest amount. The first component is the interest from the date of the loss to the date of the judgment. This element is generally awarded either as prejudgment interest or as a portion of the continuing damages up to the time of the judgment. The second component is the interest from the date of the judgment to the date that the damages are paid. This amount is awarded as post-judgment interest

Joseph A. Bonjorno, George M. Kerr, Jr. and Barbara K. Clisby ("Bonjorno"), trustees in liquidation and dissolution of Columbia Metal Culvert Co., Inc. ("Columbia"), filed a motion for award of post-judgment interest under 28 U.S.C. § 1961 against defendants Kaiser Aluminum Chemical Corp. and Kaiser Aluminum Chemical Sales, Inc. ("Kaiser").[2] The merits of the underlying case are not relevant for purposes of this appeal.[3] However, a statement of the procedural history of the case is necessary in order to resolve the issues presented.

The complaint in this case was filed in January, 1974. At the first trial, the United States District Court for the Eastern District of Pennsylvania directed a verdict for Kaiser at the conclusion of Bonjorno's evidence. The Court of Appeals for the Third Circuit reversed, holding that there was sufficient evidence to go to the jury. *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp.*, 579 F.2d 20, 37 (3d Cir.1978).

A second trial held in 1979 resulted in a jury verdict for Bonjorno. On August 21, 1979, the jury awarded Bonjorno damages in the trebled amount of $5,445,000.00 and the judgment was entered on August 22, 1979. Kaiser then filed motions for a new trial and judgment NOV.

On June 17, 1981, the district court denied Kaiser's motions as to the jury's prior liability verdict, but concluded that the evidence did not support the jury's damage award and granted Kaiser's motion for a new trial as to damages only. *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 518 F.Supp. 102, 109, 119 (E.D.Pa.1981). Additionally, the district court granted Kaiser's motion for judgment NOV as to a portion

of the damages previously awarded by the jury in 1979. *Id.* at 114.

The limited retrial on damages was conducted in 1981 and resulted in a December 2, 1981 jury award for Bonjorno for damages in the trebled amount of $9,567,-939.00. The judgment was entered on December 4, 1981. Once again, Kaiser filed motions for a new trial and judgment NOV. On January 17, 1983, the district court granted Kaiser's motion for judgment NOV as to a portion of the damages awarded by the jury, thereby reducing the judgment to $4,651,560.00 after trebling. *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 559 F.Supp. 922 (E.D.Pa.1983). This judgment was entered on January 18, 1983.

Bonjorno then appealed the reduction of the damage award, and Kaiser cross-appealed the failure of the district court to grant a new trial or to grant in full its motion for judgment NOV. On December 27, 1984, the Court of Appeals reversed the district court's partial grant of Kaiser's motion for judgment NOV as to damages, vacated the judgment entered on January 18, 1983, and reinstated and affirmed the entire $9,567,939.00 judgment entered on the jury's verdict of December 2, 1981. *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 815 (3d Cir.1984). Kaiser's petition for rehearing in banc was denied, as was its subsequent petition for certiorari. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986).

Because the Court of Appeals' December 27, 1984 opinion was silent as to the allowance of post-judgment interest, Bonjorno petitioned this Court on June 24, 1985 for instructions to be included in the mandate pursuant to Fed.R.App.P. 37 regarding in-

under 28 U.S.C. § 1961 (1982). *See, e.g., Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1300 (9th Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985). The plaintiffs do not seek pre-judgment interest in this appeal.

**2.** Joseph A. Bonjorno, George M. Kerr, Jr. and Barbara K. Clisby were substituted as plaintiffs when Columbia went out of business.

**3.** The plaintiffs were the sole stockholders of now defunct Columbia which was at one time a

fabricator of aluminum drainage pipe in Vineland, New Jersey. The plaintiffs alleged that Kaiser monopolized the market for aluminum drainage pipe in the Mid–Atlantic region of the United States in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2 (1982). A statement of plaintiff's claims in the underlying litigation may be found in *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802 (3d Cir.1984).

terest.[4] Before this petition was acted upon by this Court, counsel for both parties entered into a stipulation providing that the district court first address all issues of interest allowable under 28 U.S.C. § 1961 and Fed.R.App.P. 37. This Court approved that stipulation on July 1, 1986 and certified the judgment in lieu of a formal mandate.

On July 1, 1986, the mandate of this Court, which had been stayed pending disposition of Kaiser's petition for a writ of certiorari, was issued to the district court. On July 3, 1986, Kaiser paid $9,567,939.00 to Bonjorno. This Court's certified judgment did not instruct the district court on the issues of post-judgment interest.

After full briefing, the district court heard oral argument on the post-judgment interest issues on December 23, 1986. On April 11, 1988, it issued its Memorandum and Order awarding $2,632,886.30 in post-judgment interest to Bonjorno. App. at 770. The district court held that interest ran from December 2, 1981, the date of the damage verdict on which the correct judgment would have been entered but for the district court's partial grant of judgment NOV.

The district court next addressed the question of whether the amendments to 28 U.S.C. § 1961 apply to money judgments entered prior to October 1, 1982, the effective date of the amendments. Specifically, having determined that the interest should run from December 2, 1981, the district court was faced with the question of whether the higher interest rate imposed by the amended version of 28 U.S.C. § 1961 should apply from December 2, 1981—ten months before the effective date of the amendments. Interpreting *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the district court refused to apply the amended statute "retroactively" and, instead, applied the version of the statute

which was in effect on the December 2, 1981 jury verdict date. App. at 784.

The federal statute governing awards of post-judgment interest in effect from the time Columbia filed its complaint on December 23, 1974 through December 2, 1981 provided:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of judgment at the rate allowed by State law.

28 U.S.C. § 1961 (1976) (amended 1982).

On April 2, 1982, Congress passed the Federal Courts Improvement Act of 1982 ("FCIA"), Pub.L. No. 97–164, 96 Stat. 25 (1982) which amended 28 U.S.C. § 1961 (effective October 1, 1982). The amended statute states in pertinent part:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all federal judges.
>
> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section

---

**4.** Fed.R.App.P. 37 provides in pertinent part: If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest.

1304(b) of title 31, and shall be compounded annually.

28 U.S.C. § 1961 (1982).

Thus, the district court's decision applies the six-percent simple interest rate required under Pennsylvania law, as opposed to the significantly higher "T-bill" rate required by the amended version of 28 U.S.C. § 1961.[5]

The district court also rejected Bonjorno's argument that interest continued to run after Kaiser paid the $9,567,939.00 judgment on July 3, 1986. After a full evidentiary hearing, the court on April 11, 1988 made a factual finding that the parties intended the July 3, 1986 payment as a payment of the principal amount. App. at 792. Bonjorno filed a notice of appeal from the April 11, 1988 Order and Kaiser filed its notice of cross-appeal on May 11, 1988.

## II.

■ We note at the outset of our analysis that the availability of interest in an action arising under a federal statute is governed by federal law, not the law of the forum state. *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1274 (3d Cir.1987). Because Bonjorno's underlying claims allege violations of the federal antitrust laws, state substantive law is not implicated. *Id.*

We have jurisdiction over this appeal because the judgment of the district court is "final" for purposes of 28 U.S.C. § 1291 (1982). Determining whether the FCIA applies to judgments entered prior to its effective date presents an issue of law, over which we have plenary review. *See, e.g., Campbell v. United States*, 809 F.2d 563, 567 (9th Cir.1987). The district court's determination that the July 3, 1986 payment was intended to go to principal presents a factual question which we review subject to the clearly erroneous standard.

### A.

### THE DATE FROM WHICH INTEREST BEGINS TO RUN

■ We must first determine the date from which post-judgment interest runs. In this case, the parties have suggested three dates as possible starting points for the accrual of post judgment interest: (1) Kaiser argues that the district court correctly began the accrual of interest on December 2, 1981, the date of the initial jury verdict on damages which was vacated and then reinstated; (2) alternatively, Kaiser argues that interest accrues from July 1, 1986, the date of this Court's mandate; and (3) Bonjorno argues that interest should accrue from August 16, 1979, the date the jury delivered its liability verdict.

First, we reject the third possibility. Bonjorno argues that interest should accrue from the date of the original liability verdict—August, 1979—because liability was ultimately affirmed. *See Bonjorno*, 752 F.2d 802. However, the August 16, 1979 verdict on liability alone was insufficient under Fed.R.Civ.P. 54(c) to allow or require the court to enter judgment. Little if any authority supports the position that post-judgment interest accrues from the date of an unliquidated verdict or from a judgment vacated by a district court which is never reinstated, modified or even appealed. The vast majority of cases which construe section 1961 to allow interest to run from a verdict rather than a "judgment" involve verdicts which include an assessment of damages where judgment is later entered on the verdict amount. *See, e.g., Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270 (3d Cir.1987); *Turner v. Japan Lines, Ltd.*, 702 F.2d 752 (9th Cir. 1983); *Givens v. Missouri–Kansas–Texas R.R. Co.*, 196 F.2d 905 (5th Cir.1952). In *Poleto*, we stated that "the purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the *ascertainment of the damage*

---

**5.** The "T-bill" rate is "equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week Unit- ed States Treasury bills settled immediately prior to the date of the judgment." 28 U.S.C. § 1961 (1982).

and the payment by the defendant." 826 F.2d at 1280 (emphasis added). This reasoning weighs against permitting Bonjorno to recover interest from August 16, 1979 (the date of the unliquidated liability verdict) or August 22, 1979 (the date of the first damage verdict which was vacated and never reinstated, increased, reduced or even appealed).[6]

We next choose between December 2, 1981 and July 1, 1986 as the proper date to begin the accrual of interest. Kaiser argued in the district court that because its liability for the $9,567,939.00 judgment did not become final until this Court issued its mandate on July 1, 1986, interest should run from this date.

We note that a split among the courts of appeals for several of the circuits exists with respect to the proper application of 28 U.S.C. § 1961, i.e., whether the date of the original award is used if it is later vacated but then reinstated or whether the date of the later award is used.[7] However, the Third Circuit Court of Appeals has previously addressed this issue.

We hold that the interest properly accrues from the December 2, 1981 judgment. *See Institutionalized Juveniles,* 758 F.2d 897, 927 n. 48 (stating that "[w]e ... reject the rule articulated in *Harris v. Chicago Great Western Ry.,* 197 F.2d 829, 835 (7th Cir.1952), which would allow interest only from the date of the revised judgment [i.e., following the Court of Appeal's mandate].").[8]

In *Institutionalized Juveniles,* 758 F.2d at 927, this Court "adopt[ed] the rule set out in" *Perkins v. Standard Oil Co.,* 487 F.2d 672 (9th Cir.1973). In addressing the amount of post-judgment interest available on a reduced attorney fee award, the court in *Perkins* held that the reduction of the award was a partial affirmance of the district court judgment and that interest would run from the date the district court erroneously awarded the excessive fees. 487 F.2d at 676. The court stated that "interest should run from the date of entry of the original judgment because that is the date on which the correct judgment should have been entered." *Id.*

Had there been no error by the district court in this case, a judgment for damages would have been entered on December 4, 1981, based on the jury verdict returned

---

**6.** The cases allowing interest to run from a date other than the final judgment date involve situations in which the court either reinstates a verdict or modifies the amount of the judgment. *See, e.g., Institutionalized Juveniles v. Secretary of Pub. Welfare,* 758 F.2d 897 (3d Cir.1985) (modifying a judgment); *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1300 (9th Cir.1984) (holding that plaintiff is entitled only to post-judgment interest from the date of the first judgment to the date of the second judgment because the claim was not liquidated until the first judgment).

**7.** *See Chattem, Inc. v. Bailey,* — U.S. —, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988) (White, J.) (dissenting from denial of certiorari). The Courts of Appeals for the Seventh and Tenth Circuits use the later date for purposes of calculating post-judgment interest under this statute. *See Harris v. Chicago Great W. Ry Co.,* 197 F.2d 829, 836 (7th Cir.1952); *Ashland Oil, Inc. v. Phillips Petroleum Co.,* 607 F.2d 335, 366 (10th Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980). By contrast, the Courts of Appeals for the First, Second, Third, Fifth, Sixth, Eighth and Ninth Circuits have adopted a broader reading of § 1961 and begin the accrual of interest from the date of the initial judgment. *See United States v. Michael Schiavone & Sons, Inc.,* 450 F.2d 875, 876–77

(1st Cir.1971); *Smith v. National Railroad Passenger Corp.,* 856 F.2d 467 (2d Cir.1988); *Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270, 1280–81 (3d Cir.1987); *Affiliated Capital Corp. v. City of Houston,* 793 F.2d 706, 710 (5th Cir.1986); *Bailey v. Chattem,* 838 F.2d 149, 153 (6th Cir. 1988), *cert. denied,* — U.S. —, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988); *Buck v. Burton,* 768 F.2d 285, 287 (8th Cir.1985); *Turner v. Japan Lines, Ltd.,* 702 F.2d 752, 755–57 (9th Cir.1983). In *Smith,* the Court of Appeals for the Second Circuit recently reversed the position it had earlier taken in *Powers v. New York Cent. R.R.,* 251 F.2d 813, 818 (2d Cir.1958).

**8.** Kaiser acknowledges in its brief that this Court of Appeals would most likely rule that the earlier date applies; however, it presents the argument for purposes of preserving it for possible appeal to the United States Supreme Court in light of the conflict among circuit courts. Kaiser states that "Kaiser acknowledges, however, that the combined effect of this Court's holding in *Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270 (3d Cir.1987), and *Institutionalized Juveniles v. Sec. [of] Pub. Wel.,* 758 F.2d 897 (3d Cir.1985), may foreclose this argument before this Court." Appellee's Brief at 41.

December 2, 1981. The district court then correctly revised its decision to conform with *Poleto*, 826 F.2d at 1280, stating that interest is calculated from the date of the damage verdict underlying the appropriate judgment. Accordingly, the district court correctly awarded interest from December 2, 1981.[9]

### B.

### THE APPLICABLE LAW AND RATE OF INTEREST

■ We next address the issue of which version of the FCIA is to govern the calculation of post-judgment interest.[10] When the December 2, 1981 jury verdict in this case was rendered, 28 U.S.C. § 1961 applied the relevant state interest rate, which in this case was Pennsylvania's six percent simple interest rate. *See* 28 U.S.C. § 1961 (1976).[11] Effective October 1, 1982, the statute was amended to provide a uniform federal post-judgment interest rate equal to the T-bill rate. *See* 28 U.S.C. § 1961(a) (1982).

The various courts of appeals have disagreed over whether to apply the federal method of determining interest to judgments entered before October 1, 1982. *See, e.g., Bailey v. Chattem, Inc.*, 838 F.2d 149, 156 (6th Cir.1988) (applying the pre-amendment rate of interest up to the effective date of the amendments and applying the post-amendment rate thereafter); *Campbell v. United States*, 809 F.2d 563, 569 (9th Cir.1987) (same); *Litton Sys. v. American Tel. & Tel. Co.*, 746 F.2d 168 (2d

Cir.1984) (holding that the FCIA does not apply to a June 1981 judgment against a private party for interest accruing either after the judgment or after the effective date); *R.W.T. v. Dalton*, 712 F.2d 1225, 1234–35 (8th Cir.) (holding that the amended statute should apply to a pre-effective date judgment for the entire post-judgment period), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Thus, three interpretations have been presented and approved by the various courts of appeals: (1) the FCIA applies to judgments entered after the effective date; (2) it applies to judgments entered before the effective date for the entire post-judgment period; and (3) it applies to judgments entered before the effective date but only for interest accruing in the period after the effective date.[12] *See Campbell*, 809 F.2d at 568.

We find that the issue is whether "to apply the law in effect at the time [a court] renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). *Bradley*, therefore, provides the starting point for our analysis.

The district court, relying on two cases in the Eastern District of Pennsylvania, found that "courts in this Circuit have uniformly assumed the correctness of the holding herein that the prior version of section 1961 applies to judgments entered while it was in effect and amended section 1961 applies to judgments entered on and after its effective date." App. at 789, *citing United*

---

**9.** *See, e.g., Poleto*, 826 F.2d at 1280 (stating that "[t]he purpose of postjudgment interest is not diluted where, as here, the initial ascertainment of damages is left standing but a delay occurs between the date of the ascertainment and the date of the eventual entry of judgment."). In *Poleto*, the verdict and the entry of judgment were separated by approximately three months. We concluded that "[b]ecause all the substantive issues were decided by the jury upon the verdict ... it is analogous to a final judgment for purposes of section 1961." *Id.*

**10.** We have considered Bonjorno's argument that a "market rate" of interest should apply; however, we find the argument to be without merit.

**11.** The post-judgment interest rate in Pennsylvania is calculated at the legal rate which is six percent. 42 Pa.Cons.Stat.Ann. § 8101 (Purdon 1988).

**12.** The Courts of Appeals for the Second, Fourth, Fifth and Seventh Circuits agree that amended § 1961 should not to be construed to apply to judgments entered before its effective date, even if on that date they were pending on direct review. *See Brooks v. United States*, 757 F.2d 734, 741 (1985); *Litton*, 746 F.2d at 174; *Merit Ins. Co. v. Leatherby Ins. Co.*, 728 F.2d 943, 944 (7th Cir.1984), *cert. denied*, 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984); *United States v. Dollar Rent A Car Systems, Inc.*, 712 F.2d 938, 940 n. 5 (4th Cir.1983).

*States ex rel. Billows Elec. Supply Co. v. E.J.T. Construction Co.,* 557 F.Supp. 514 (E.D.Pa.1983) (holding that the FCIA does not apply to a July 1981 judgment against a private party for interest accruing after the judgment), *aff'd mem.,* 729 F.2d 1450 (3d Cir.1984) and *Peterson v. Crown Fin. Corp.,* 553 F.Supp. 114 (E.D.Pa.1982) (same holding for a July 1979 judgment). While the United States Court for the Eastern District of Pennsylvania has refused to apply the post-amendment rate to judgments pre-dating the effective date of the amendments, its decisions do not bind this Court. We note that neither of these cases cite *Bradley.*[13] Thus, we view this issue as an open question not yet squarely addressed by this Court.

At a first glance, the *Bradley* presumption of applying the law in effect at the time a court renders its decision in the absence of contrary legislative intent seems inconsistent with the long-standing rule of statutory construction that statutes are presumed to have only "prospective" effect and will be given "retroactive" effect only if there is affirmative legislative direction to do so. However, upon closer examination, the two principles are not in conflict here.[14] While the term "retroactive" is commonly used to refer to statutes that operate on pre-enactment transactions and pre-existing rights or obligations, a statute is not "retroactive" simply because facts from the pre-enactment period are implicated. The presumption against "retroactivity" has generally been applied only when application of the new law would affect rights or obligations existing prior to

the change in law. *See, e.g., United States v. Security Indus. Bank,* 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982); *Weaver v. Graham,* 450 U.S. 24, 29–30, 101 S.Ct. 960, 964–965, 67 L.Ed.2d 17 (1981); *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925). We apply the *Bradley* presumption in this case because to do so does not pose any constitutional problems.

### 1. *Legislative History*

We turn next to the legislative history to determine whether Congress intended that the FCIA not be applied to interest accruing after the effective date on judgments entered prior to that date. We agree with the Courts of Appeals for the Second and Ninth Circuits that this presumption may be displaced by "fair indication that the statute, properly construed, has only prospective effect." *See Litton Systems,* 746 F.2d at 174; *Campbell,* 809 F.2d at 572 (quoting *Litton Systems,* 746 F.2d at 174). However, if the legislative history is unclear, the *Bradley* presumption should control. *See Bradley,* 416 U.S. at 715–16, 94 S.Ct. at 2018.[15]

Unfortunately, the legislative history concerning the effect of the FCIA's post-judgment interest provision on unpaid judgments entered prior to the date of enactment is sparse. In *Campbell,* the Court of Appeals for the Ninth Circuit stated that it was "not persuaded that this scant indication in the statute and legislative history constitutes a 'fair' indication that the FCIA

---

**13.** *Bradley* does not characterize the issue as one of "retroactivity."

**14.** In *Bradley,* Justice Blackmun, writing for a unanimous Court, cautioned that the issue was not whether the fee statute applied "retroactively" to fees for services rendered prior to enactment, but rather whether a fee award was justified by current law. He states:

The question, properly viewed, then, is not simply one relating to the propriety of retroactive application of § 718 to services rendered prior to its enactment, but rather, one relating to the applicability of that section to a situation where the propriety of a fee award was pending resolution on appeal when the statute became law.

416 U.S. at 710, 94 S.Ct. at 2015.

**15.** The Court in *Bradley* did not explicitly hold that a change in the law must be given effect to pending cases unless a clear indication existed to the contrary. Nevertheless, although the Court stated that "neither our decision in *Thorpe* [*v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)] nor our decision today purports to hold that courts must always thus apply new laws to pending cases in the absence of clear legislative direction to the contrary," *id.,* it did apply the *Bradley* presumption of retroactivity in the face of the "equivocal" legislative history of the statute at issue in the case, *id.* 416 U.S. at 716–17, 94 S.Ct. at 2018–19.

should not be interpreted to impose interest at the T-bill rate in the period *following* the enactment date." 809 F.2d at 574 (emphasis in original). The "scant indication" was that the effective date of the amendments was delayed for a period after the date of the enactment of the amendments. The district court in this case found persuasive the fact that Congress specifically postponed the effective date of the amendments for six months from passage on April 2, 1982 until October 1, 1982. App. at 787–88, *citing* Pub.L. No. 97–164, § 402, 96 Stat. 57 (1982). The district court concluded on this basis that Congress did not intend interest to accrue at the T-bill rate on judgments entered before October 1, 1982. We disagree. This ambiguous move to delay the effective date of the amendment is insufficient to displace the *Bradley* presumption.

We are also guided by the principle of statutory construction that courts assume that "our elected representatives, like other citizens, know the law." *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979). Consequently, we may assume that, when Congress passed the amendment to section 1961, as well as the entire FCIA, it was aware that courts would apply the amendment to cases pending on appeal under *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) and *Bradley v. Board of Education*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In light of this, it seems unreasonable to conclude that Congress intended its delay in the effective date of the provisions of the entire Act to act as a directive to the judiciary to disregard *Thorpe* and *Bradley* and to apply the amendment prospectively.

We are unpersuaded by the *Litton* court's reasoning that awarding interest beginning on the effective date when the interest is keyed to some past date (the date of judgment) "makes no economic sense at all" and that Congress could not have intended such a result. *Litton*, 746 F.2d at 175.[16] The Court of Appeals for the Second Circuit also stated in *Litton* that a party found liable would receive an "unwarranted windfall" if interest rates subsequently declined. *Id.* However, if the rates rise after entry of judgment, the prevailing party would not be fully compensated for the loss of the use of its money. It appears that Congress believed that the T-bill rate would strike an adequate balance between the dangers of windfall and undercompensation. Further, we believe that Congress sought to establish a scheme which would be easy to administer—a goal which is undermined if more than one interest rate applies. Therefore, we find that a proper construction of the FCIA does not require that the *Bradley* presumption be set aside.

Finally, this Court has cited with approval *R.W.T. v. Dalton*, 712 F.2d 1225 (8th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983), which holds that the T-bill rate applies even with respect to judgments entered prior to the effective date of the amendments. *See Institutionalized Juveniles*, 758 F.2d at 927 n. 49. We find the rule adopted by the Court of Appeals for the Eighth Circuit to be the better rule, even though it is a minority position among the circuit courts. The purpose of interest on the judgment is to preserve the value of the judgment against the diminishing effects of the time value of money, and the *Dalton* rule comes closest to achieving this objective.[17]

---

**16.** We also acknowledge the dissent's objection to retroactive application which is based on the hypothetical situation in which interest on judgments entered simultaneously may accrue at different rates depending on whether the appeal from those judgments endures beyond the effective date. However, the dissent ignores the fact that such differing results may occur in any case in which the *Bradley* presumption controls. Whether a change in the law must be applied to cases pending on appeal under *Bradley* must always rest on the fortuitous continuation of the

appeal beyond the time the law to be applied underwent the change at issue.

**17.** *See* Note, *The Postjudgment Interest Rate in Pennsylvania: Ignoring Reality for Too Long*, 23 Duq.L.Rev. 1083–84 (1985) (footnotes omitted) (stating that Pennsylvania's rate "represents the lowest non-variable postjudgment interest rate applied in the United States, both in the state and federal courts. At best, this represents a legislative oversight by the Pennsylvania Legislature; at worst, it is indicative of a ... failure

### 2. *"Manifest Injustice"*

While we find that the legislative history of the FCIA does not displace the *Bradley* presumption, the presumption may, nevertheless, be overcome if the *Bradley* exceptions for manifest injustice apply. *Bradley* requires that interest accrue prospectively in this case if such a construction would not result in "manifest injustice." 416 U.S. at 716–17, 94 S.Ct. at 2018–19. *Bradley* enunciates the following three-part test pertaining to finding "manifest injustice":

> The concerns expressed by the Court in [*U.S. v.*] *Schooner Peggy* [5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801)] and in *Thorpe* relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon these rights.

416 U.S. at 717, 94 S.Ct. at 2019.

With respect to the first *Bradley* factor, the Supreme Court in *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801), stated that, "in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns, where individual rights ... are sacrificed for national purposes, ... the court must decide according to existing laws." The plaintiffs in the present case are acting as private attorneys general in enforcing federal policy embodied in the antitrust laws. *See, e.g., Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 634–35, 105 S.Ct. 3346, 3358–59, 87 L.Ed.2d 444 (1985) (stating that "[a] claim under the antitrust laws is not merely a private matter.") (citations omitted). We believe that an action to increase the rate at which post judgment interest accrued on a judgment awarded to a private antitrust plaintiff also implicates

national interests. *But see Litton*, 746 F.2d at 175.[18] When antitrust plaintiffs serve the national interest by acting as private attorneys general in enforcing the antitrust laws, the congressional mandate that plaintiffs who prevail in such a suit be awarded treble damages should not be diminished by insufficient postjudgment interest. Therefore, this factor weighs heavily against finding manifest injustice.

The second factor concerns the nature and identity of the parties. In *Bradley*, the Supreme Court stated that it "has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020. Bonjorno's right to receive interest did not mature or become unconditional until a final controlling judgment was entered on the merits. This did not occur until after the effective date of the amendments.

The third *Bradley* factor pertains to the nature of the impact of the change in law upon these rights. The *Bradley* Court suggested that to find manifest injustice, the Court must find that "new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." 416 U.S. at 720, 94 S.Ct. at 2021. This inquiry focuses on "whether the new statutory obligation, if known, would have caused the defendant to alter its conduct." *Campbell*, 809 F.2d at 576. We agree, only in part, with the Ninth Circuit's analysis in *Campbell* that while "imposition of the T-bill rate for the period *prior* to the enactment or effective dates might impose unanticipated obligations on litigants, we cannot say the same for interest accruing after the delayed effective date." *Id.* As in *Campbell*, the fact that this case involves a judgment that was appealed long after the enactment date

---

to grasp the realities of the modern economic world....").

**18.** The Second Circuit Court of Appeals stated in *Litton* that:

> [w]hatever consideration is appropriate for antitrust plaintiffs as private attorneys general

bringing suits that serve the national interest, there is little doubt that national interests are not affected by the outcome of this collateral action to secure an increase in the rate of post-judgment interest.

*Litton*, 746 F.2d at 175.

supports the position that the imposition of the T-bill rate after the effective date does not constitute an unforeseeable obligation. However, we go even further and hold that imposition of the T-bill 'rate would not constitute manifest injustice even for the ten month period between the December 2, 1981 judgment from which interest in this case accrues and the October 1, 1982 effective date of the amendments. We believe that the Court of Appeals for the Eighth Circuit in *Dalton* correctly applied *The Schooner Peggy* and the *Bradley* presumption to hold that the amended version of section 1961 applies as current law, regardless of whether interest begins to accrue under the statute prior to October 1, 1982.

In view of the nature and identity of the parties, the nature of their rights, and the nature of the impact of the change in the law on their rights, we conclude that application of the T-bill rate to the entire period does not result in manifest injustice. Thus, we conclude that the district court erred in applying Pennsylvania's six percent simple interest rate in this case.

### C.

### The July 3, 1986 Payment

■ On July 3, 1986, Kaiser paid Bonjorno the sum of $9,567,939.00. The United States rule provides that payments on judgments are applied first to accrued interest and then to principal, unless there is a " 'clearly expressed intention [by the parties] to handle allocation some other way.' " *Devex Corp. v. General Motors Corp.*, 749 F.2d 1020, 1025 (3d Cir.1984) (quoting *Nat G. Harrison Overseas Corp. v. American Barge Sun Coaster*, 475 F.2d 504, 507 (5th Cir.1973)). The court below held an evidentiary hearing to determine the intent of the parties and found that the parties intended the payment as full payment of the outstanding principal. App. at 792. The court then found that the payment "would satisfy the principal judgment and stop the accrual of post-judgment interest." App. at 793. We affirm the finding of the district court that the payment of $9,567,939.00,

the exact amount of the jury award without accrued interest, was intended by all parties to be allocated to the principal sum due.

### III.

### CONCLUSION

In summary, we conclude that interest commenced accruing on the $9,567,939.00 jury verdict entered on December 2, 1981. For the reasons set forth above, the verdict draws interest pursuant to the amended version of 28 U.S.C. § 1961 from December 2, 1981.

Because we find that the higher T-bill rate must be applied from December 2, 1981, the July 3 payment did not stop the accrual of interest.[19] On each December 2, the anniversary of the jury verdict, a new principal is established. The July 3 payment must be subtracted from the new principal which exists just prior to the July 3, 1986 payment. Interest then accrues in the same fashion on this new principal until the judgment is paid.

STAPLETON, Circuit Judge, concurring and dissenting.

I concur in the court's holding that the plaintiff should receive post-judgment interest on $9,567,939 from December 2, 1981. If the district court had not erred by vacating the judgment entered on the jury's verdict of December 2, 1981, the plaintiffs would have received post-judgment interest commencing on that date. *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270 (3d Cir.1987). Under the teachings of *Institutionalized Juveniles v. Sec. of Public Welfare*, 758 F.2d 897 (3d Cir. 1985), the fact that the plaintiffs were required to litigate an appeal to fully vindicate their rights should not result in post-judgment interest commencing any later than that date.

I reject the plaintiffs' suggestion that interest should run from August 16, 1979 because I know of no logic or authority

---

**19.** According to a July 27, 1982 Memorandum on Post–Judgment Interest issued by the Office of the United States Courts, interest is computed daily and compounded annually. App. at 475.

which supports the proposition that post-judgment interest should commence as of the date of a verdict *as to liability only.* Finally, I conclude that the date of the 1979 damage verdict is inappropriate as well. Where, as here, a judgment and damage verdict are vacated because the plaintiffs failed to supply evidence to support the jury's damage award and that vacation is not overturned, I perceive no justification for awarding post-judgment interest back to the date of the vacated verdict or judgment.

I am constrained to dissent, however, from the court's holding that the 1982 amendment to 28 U.S.C. § 1961 is applicable to this case. Like the Courts of Appeals for the Second, Fourth, Fifth, and Seventh Circuits,[1] I would hold that this amendment does not apply to any judgment entered prior to October 1, 1982, the effective date of the amendment, without regard to whether there was an appeal from the judgment pending on that date.[2]

I would uphold the decision of the district court with respect to the applicable rate of post-judgment interest for essentially the reasons articulated by Judge Newman in *Litton Systems v. American Tel. & Tel. Co.,* 746 F.2d 168 (2d Cir.1984), and by Judge Johnson in *Brooks v. United States,* 757 F.2d 734 (5th Cir.1985). I will add only two thoughts, both of which go to the issue of whether Congress would wish the presumption of *Bradley v. Board of Education,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) applied in connection with the amendment to § 1961.

Unlike most other legislatively established rules of law, the rule established by § 1961 after its amendment, as well as the rule established by it before, are focused on a particular point in time—the date of the entry of judgment. On that date, under both rules, the rate of post-judgment interest is fixed once and for all time for the particular case, and the rate fixed takes effect immediately. At any time thereafter, the judgment may be executed upon by the plaintiff in the absence of a supersedeas bond or may be voluntarily satisfied by the defendant whether or not there is to be an appeal. Given this focus on the date of the entry of judgment, I think it highly unlikely that Congress intended the post-judgment interest rate in a particular case to be retroactively altered in the event an appeal lasted beyond the effective date of the amendment.

The Federal Courts Improvement Act containing the amendment to § 1961 was enacted on April 2, 1982. In the Act, Congress expressly provided that "[u]nless otherwise specified, the provisions of [the] Act shall take effect on October 1, 1982." Pub. L. No. 97–164, § 402. Since Congress did not "otherwise specify" with respect to the amendment to § 1961, this effective date provision postponed the change in the manner of establishing a post-judgment interest rate for a period of six months. Thus, Congress chose to postpone for a very substantial period the relief it was affording to plaintiffs whom it perceived as being substantially undercompensated by prevailing state interest rates. This decision suggests to me that Congress had a substantial countervailing concern about the reliance interests of litigants who had made or would make decisions concerning ap-

---

**1.** *Litton Systems v. American Tel. & Tel. Co.,* 746 F.2d 168 (2d Cir.1984); *U.S. v. Dollar Rent A Car Systems, Inc.,* 712 F.2d 938, 940 n. 5 (4th Cir. 1983); *Brooks v. United States,* 757 F.2d 734 (5th Cir.1985); *Merit Ins. Co. v. Leatherby Ins. Co.,* 728 F.2d 943, 944 (7th Cir.) (per curiam), *cert. denied* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). In a July 27, 1982 memorandum to all Federal Judges, Magistrates, Court Executives, and Court Clerks, the Administrative Office of the United States Courts also adopted the position that the 1982 amendment to § 1961 should not be applied retroactively, stating:

It is our view that the new rate will apply only to judgments entered on or after [the effective date]. The rate attaches as of the date of judgment and does not change thereafter unless the judgment is vacated or otherwise set aside.

**2.** *Institutionalized Juveniles v. Sec. of Public Welfare,* 758 F.2d 897, 927 (3d Cir.1985), is not in conflict with this conclusion. The court there held that the new post-judgment interest rate should be applied to the original order allowing the award of counsel fees which was entered on July 26, 1983, well after the effective date of the amendment.

peals and/or the payment of judgments based on the old rates. Given that this concern is equally implicated whether or not an appeal winds up continuing beyond the effective date of the Act, I am unwilling to attribute to Congress an intent to discriminate between the holders of simultaneously entered judgments based on whether their appeals were still pending on the effective date of the Act.

For the foregoing reasons, I would affirm the judgment of the district court.