**Theodore CLARK**

v.

**SEARS, ROEBUCK & COMPANY.**

**Civ. A. No. 92–CV–6438.**

United States District Court, E.D. Pennsylvania.

July 26, 1993.

William P. Murphy, Prospect Park, PA, for plaintiff.

Madeline S. Baio, Eric A. Weiss, Liebert, Short & Hirshland, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This action is once more before the Court upon motion of the defendant, Sears, Roebuck and Company for the entry of summary judgment in its favor. For the reasons which follow, the motion shall be granted and judgment in no amount entered in favor of the defendant.

## I. HISTORY OF THE CASE.

According to the parties' pleadings, stipulation of uncontested facts and the evidence now produced of record, this case arose in or about December, 1989, when the plaintiff, Theodore Clark, a black individual, was informed by Sears Store Manager Al Dubeck that he was being reassigned from his position as Receiving Supervisor at the defendant's South Philadelphia store and would thereafter be responsible only for overseeing the maintenance functions at the store. Since September, 1987, Mr. Clark had been responsible for the supervision of both the maintenance and the receiving operations at that store and, at the time of the reassignment, had been at a job grade 11 earning $10.65 per hour. As a result of the reassignment, Plaintiff received a wage increase to $11.32 per hour and the responsibility for overseeing the receiving function was reassigned to the former Auto Shop Supervisor, Anthony Barile, a white employee. Prior to the January, 1990 realignment, Mr. Barile had been earning $13.42 per hour; upon the assumption of his new duties, his wage rate was increased to $14.15 per hour.

In April, 1990, Mr. Clark was injured while performing a maintenance function at the South Philadelphia store and has been unable to work since that time. In accordance with Sears' disability policies, plaintiff's ongoing inability to return to work resulted in his official termination on September 3, 1991. Anthony Barile remained with Sears until he was laid off in March, 1991. He was never recalled to work and in March, 1993, the Oregon Avenue store closed permanently.

Plaintiff contends that in June, 1991, he received four payroll summaries from an anonymous source which first alerted him to

the fact that Mr. Barile was earning more in the position of receiving supervisor than he had been. Based upon this information, in November, 1991 plaintiff filed complaints with the Pennsylvania Human Relations Commission and with the Equal Employment Opportunity Commission alleging that the defendant had discriminated against him on the grounds of race in violation of Title VII and Section 1981 of the Civil Rights Acts of 1964 and 1991, 42 U.S.C. §§ 1981, 2000e–5. A right to sue letter was thereafter issued by the EEOC and the plaintiff filed this lawsuit on November 9, 1992.

## II.   DISCUSSION.

1.  *Standards Governing Disposition of Summary Judgment Motions under the Federal Rules of Civil Procedure.*

■   Under Fed.R.Civ.P. 56(c), summary judgment is appropriately entered in favor of a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pursuant to this rule, the district courts must look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

Generally, the party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and of identifying those portions of the pleadings, depositions, interrogatory answers, admissions and any affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a summary judgment motion, the court must assume the truth of the nonmovant's evidence, and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Lockley v. Chao,* 812 F.Supp. 246, 248–249 (D.D.C.1993).

■   This is not to say, however, that a non-moving party may rest upon the allegations contained in his or her pleadings in defense of a summary judgment motion. To be sure, Fed.R.Civ.P. 56(e) provides, in pertinent part:

"When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Thus, while the burden of demonstrating the absence of genuine issues of material fact is initially on the moving party, once such a showing has been made the non-movant must present evidence through affidavits, depositions or admissions on file which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *See: Celotex v. Catrett, supra,* 477 U.S. at 321–323, 106 S.Ct. at 2552–2553; *Keyes v. National Railroad Passenger Corp.,* 756 F.Supp. 863 (E.D.Pa.1991); *Applications Research Corp. v. Naval Air Development Center,* 752 F.Supp. 660 (E.D.Pa.1990).

2.  *Retroactive Application of the Civil Rights Act of 1991 to the Case at Bar.*

In support of its motion for summary judgment, Defendant first renews the argument which it made in support of its previously-filed motion to dismiss, that the plaintiff has failed to state a viable cause of action under Section 1981 as a result of the United States Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and that the 1991 amendments to Section 1981 should not be given retroactive application. In this regard, Sears correctly asserts that in first considering this issue this Court focused on the date on which the civil action complaint was filed in this action rather than on the date on which the complained-of conduct occurred. Upon further evaluation of the facts

of this case, we agree with the defendant that this focus was misplaced and hence an evaluation of whether or not the 1991 amendments to the Act should be retroactively applied is properly undertaken at this time.

In essence, the U.S. Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) held that racial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations. In response to this and to other Supreme Court civil rights decisions, Congress enacted and on November 21, 1991, President Bush signed into law, the Civil Rights Act of 1991. *See, e.g.: Blanding v. Pennsylvania State Police*, 811 F.Supp. 1084, 1090 (E.D.Pa.1992); Section 3, Pub.L. 102–166. Part and parcel of that Act was the amendment of Section 1981 to read as follows:

**(a) Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) Definition**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c) Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

**(A)** *A Review of the Act's Language and Legislative History.*

■ It is of course axiomatic that the determination of whether a statute should be applied retroactively must begin with the language of the statute itself and that the language of a statute is considered controlling in this analysis unless there is a clear legislative intent to the contrary. *Bread Political Action Comm. v. Federal Election Comm'n*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982); *Aiken v. Bucks Ass'n for Retarded Citizens, Inc.*, 799 F.Supp. 522, 527 (E.D.Pa.1992).

Unfortunately, the language of the statute in this case is far from clear. Section 402(a) of the Act states only that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." As has repeatedly been observed, this clause provides virtually no guidance inasmuch as it is susceptible to a number of different interpretations. For example, it might mean that the 1991 Act applies to conduct which occurred after the enactment, it might mean that the Act applies to cases filed after the enactment, it might mean that the Act applies to all proceedings beginning after the enactment, it might mean that the Act's provisions apply to all pending cases at any stage of the proceedings, or it might mean that the Act's procedural provisions apply to proceedings begun after enactment and the substantive provisions apply to conduct that occurs after the enactment. *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 932 (7th Cir.1992); *Savko v. Port Authority of Allegheny County*, 800 F.Supp. 268, 271 (W.D.Pa. 1992).

Likewise, Section 402(b) sheds almost no light on the retroactivity question. That Section, which appears to have been inserted for the sole purpose of ensuring that the 1991 Act would not be read to allow further litigation relating to the case of *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (a disparate impact case that had been in litigation for some twenty-five years), merely provides that "[n]otwithstanding any other provision of this Act, nothing in this Act shall apply to

any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983." While it has been argued that by specifically stating that the 1991 Act does not apply retroactively for certain disparate impact discrimination cases, the foregoing provision implies that the 1991 Act is otherwise applicable to cases filed after March 1, 1975 and before the enactment of the 1991 amendments, such an inference nevertheless cannot be said to be a "clear expression" of the legislature's intent. *Crumley v. Delaware State College,* 797 F.Supp. 341, 345 (D.Del.1992); *Thompson v. Johnson & Johnson Management Information Center,* 783 F.Supp. 893, 894–895 (D.N.J.1992).

Moving to the second phase of our analysis, we turn to the legislative history of the '91 amendments for guidance as to whether the members of the legislature intended that the act be given prospective or retroactive application. Upon careful scrutiny of that history, however, we find it to be equally, if not more confusing, than the Act's actual words. Indeed, it appears as though the congressional discussion of the effective date of the Act was essentially split along party lines with the sentiments of the Republican members of the House and Senate squarely behind Senator Danforth's argument that the Act was to have prospective effect only while their Democratic counterparts were in agreement with Senator Kennedy's position that the new law should be applied retroactively. *See Generally: Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1372 (5th Cir.1992); *Mozee v. American Commercial Marine Service Co., supra,* at 933–934; *Vogel v. City of Cincinnati,* 959 F.2d 594, 597–598 (6th Cir.1992). This disagreement was eventually resolved by our congressional leaders' decision to leave it "up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment." *See: Tyree v. Riley,* 783 F.Supp. 877, 887 (D.N.J.1992) citing 137 Cong.Rec. S.15485 (daily ed. 30 October 1991). Accordingly, resort must be had to a review of the Supreme Court's rulings on retroactivity.

(B) *A Review of the General Law on Retroactivity.*

In reviewing the decisions of the U.S. Supreme Court and the Third Circuit Court of Appeals on the issue of the retroactive application of statutory amendments, we once again find that two conflicting lines of authority exist as a result of the rulings by the high court in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). *Bradley* was a protracted school desegregation case which involved the issue of whether an attorney's fee statute which took effect while the case was on appeal authorized an award of counsel fees irrespective of the fact that those expenses were incurred prior to the date that that section went into effect. In resolving that question, the Supreme Court anchored its holding on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016.

The Court in *Bowen,* on the other hand, when faced with the question of whether to retroactively apply the Secretary of Health and Human Services' reissuance of the 1981 Medicare wage-index rule, enunciated a contrary rule. In holding that the 1984 reinstatement of the 1981 cost-limit rule was invalid, the *Bowen* court reasoned that "retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208, 109 S.Ct. at 471.

Notwithstanding its recognition of the "apparent tension" between the *Bradley* and *Bowen* lines of thought, the Supreme Court has thus far declined to reconcile the caselaw in this area with the result that both the *Bradley* and the *Bowen* doctrines have been followed in the Circuit Courts. *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990).[1] While the Court of Appeals for the

---

**1.** In this regard, Justice Scalia's concurring opin- ion in the *Kaiser Aluminum* case is particularly

Third Circuit is no exception and there is therefore authority in this Circuit for both prospective and retroactive application of newly-enacted statutes, it is interesting to note that even in those cases in which a new statute has been applied prospectively, the courts have largely employed principles that are reminiscent of *Bradley* rather than *Bowen*. *See, e.g.: U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3rd Cir.1990); *Air–Shields, Inc. v. Fullam*, 891 F.2d 63, 65 (3rd Cir.1989); *Davis v. Omitowoju*, 883 F.2d 1155, 1170–1171 (3rd Cir.1989); *Wheeling–Pittsburgh Steel Corp. v. Interstate Commerce Commission*, 723 F.2d 346, 355 (3rd Cir.1983); *Savko v. Port Authority of Allegheny County, supra*, at 272–274; *Aiken v. Bucks Ass'n for Retarded Citizens, Inc., supra*, at 530–531; *Tyree v. Riley*, 783 F.Supp. 877, 883–884 (D.N.J.1992).

■ In this manner, the courts in this circuit have often taken the intermediate road by holding that the presumption of prospective application should generally be employed only when application of the new law would affect rights or obligations existing prior to the change in law. *Davis, supra,* at 1170 citing, *inter alia, United States v. Security Industrial Bank*, 459 U.S. 70, 79–80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982) and *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 865 F.2d 566, 573 (3rd Cir.1989). This rule is in harmony with the manifest injustice exception to the *Bradley* presumption because if a new statute affects the rights and obligations of a party, a manifest injustice would likely result from the retroactive application of the new law. *Aiken, supra,* 799 F.Supp. at 531; *Tyree, supra,* 783 F.Supp. at 884.

■ *Bradley* dictates that a Court look to the following three factors to determine whether a statute is presumed applicable to cases pending at the time of the statute's enactment: (1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in law upon those rights. 416 U.S. at 717, 94 S.Ct. at 2019; *Crumley v. Delaware State College, supra,* 797 F.Supp. at 349. These factors have been further defined so that the focus of the first factor has been said to be whether the matter is a private case between individuals or a matter of "great national concern, where individual rights ... are sacrificed for national purposes ..."; the focus of the second concerns whether retroactive application would "infringe upon or deprive a person of a right that had matured or become unconditional;" and the third involves the issue of "whether the new statutory obligation, if known, would have caused the defendant to alter its conduct." *Kimble v. DPCE, Inc.,* 784 F.Supp. 250, 253 (E.D.Pa.1992) citing *Bradley*, 416 U.S. at 717, 720, 94 S.Ct. at 2019–2020 and *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). *See Also: Tyler v. Pennsylvania, Department of Revenue*, 793 F.Supp. 98, 101 (M.D.Pa.1992).

■ Viewing all of the foregoing in the context of the case at bar, we first observe that this case is between two private parties: an individual employee and his former corporate employer and appears to in no way involve the sacrifice of Mr. Clark's individual rights for any national purpose. There is further no evidence that retroactive application of the 1991 Act would infringe upon or deprive the plaintiff of an unconditional right. To the contrary, retroactive application would, if anything, operate to expand Mr. Clark's contractual civil rights from those which he possessed at the time the conduct complained of occurred.

Finally, accepting as true the plaintiff's allegations that Sears unlawfully engaged in disparate conduct when it reassigned his warehouse duties to Mr. Barile, we may fairly infer that had Defendant been aware of the 1991 amendments when its purportedly unlawful conduct took place in 1989, it would have acted differently. Accordingly, we can

---

noteworthy for its criticism of the analytical underpinnings of the *Bradley* decision and its proposed reaffirmation of that rule of statutory construction that absent specific indication to the contrary, the operation of nonpenal legislation is prospective only. *Kaiser,* 494 U.S. at 841, 844–850, 110 S.Ct. at 1579, 1581–1584. Whether the high court should decide to follow Justice Scalia's rationale in the immediate future is, of course, pure speculation.

reach no other conclusion but that retroactive application of the 1991 Civil Rights Act to the instant claim would clearly result in manifest injustice. We thus find that the presumption of prospective application is properly applied in this case and, consequently, summary judgment is hereby entered in favor of the defendant with respect to Plaintiff's Section 1981 claim.

### 3. *Statutes of Limitations.*

Defendant next asserts that both of the plaintiff's civil rights claims under Title VII and Section 1981 are barred by the applicable statutes of limitations and judgment should therefore now be entered in its favor as a matter of law. As was the case with the defendant's initial assertion, this argument, too, was first raised in its motion to dismiss but leave was given to permit the plaintiff to develop a record with respect to when he knew or had reason to know that the discriminatory act occurred.

■ Once again, we note that 42 U.S.C. § 1981 does not provide a limitations period and the federal courts therefore apply the most appropriate or analogous state statute in the state in which the suit has been brought. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 658, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987); *Whatley v. Department of Education*, 673 F.2d 873, 874 (5th Cir. 1982). In Pennsylvania, the two-year statute governing personal injury actions is properly applied to Section 1981 claims. *Goodman, supra*, 482 U.S. at 662, 107 S.Ct. at 2621. Under Title VII, a plaintiff must have filed a claim with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e).

■ The limitations period for employment discrimination cases commences under both Section 1981 and Title VII when the plaintiff knows or reasonably should know that the discriminatory act has occurred. *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1390 (11th Cir.1982);

*Cuffy v. Getty Refining & Marketing Co.*, 648 F.Supp. 802, 808 (D.Del.1986). In this vein, there is often confusion between the accrual date of a plaintiff's claim and the doctrine of tolling of the limitations statutes. Accrual is the date on which the statute of limitations begins to run. It is not necessarily the date on which the wrong that injures the plaintiff occurs (although it is often the same), it is instead the date on which the plaintiff discovers that he has been injured. Tolling doctrines, on the other hand, stop the statute of limitations from running even if the accrual date has passed. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990). *See Also: Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980).[2] Stated otherwise, to determine the triggering of the statute, the proper focus is on the time of the *discriminatory act* not the point at which the *consequences* of the act become painful. *Pearson v. Macon–Bibb County Hospital Authority*, 952 F.2d 1274, 1279 (11th Cir. 1992) citing *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). It is at that point that the plaintiff becomes obligated to make further inquiry into the circumstances surrounding the adverse action. *See: Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1418–1419 (3rd Cir.1991); *Wislocki–Goin v. Mears*, 831 F.2d 1374, 1381 (7th Cir.1987).

■ In the instant case, the plaintiff has testified that he believed that Mr. Dubeck was discriminating against him on the basis of his race when Dubeck first informed him in December, 1989 that he had taken his department and given it to Tony Barile. (Dep. of Theodore Clark, 4/26/93, 69–70) Notwithstanding this belief, Mr. Clark freely admits that he did absolutely nothing to investigate or to substantiate his suspicion that he had been the victim of racial discrimination or to ascertain what Mr. Barile would be earning as the result of this acquisition of new responsibilities over the receiving func-

---

**2.** Insofar as we previously determined in ruling upon Defendant's motion to dismiss that neither the equitable tolling nor the continuing violation theories had any application in this case, there is no need to revisit those questions now. To the

extent that there is any confusion with respect to those principles, we re-direct the parties' attention to our Memorandum and Order of March 29, 1993.

tion, with the exception of discussing the matter with his wife. (Clark Dep., 4/26/93, 104–106). The record further reveals that Mr. Dubeck first sought a realignment of Mr. Clark's duties from both maintenance and receiving supervisor to maintenance supervisor only in early December, 1989 and that the request was approved and Mr. Barile reassigned the receiving duties in January, 1990. (Dep. of Alfred H. Dubeck, Jr. 4/22/93, 52–54, 75–78, 100, 131–136; Affidavit of Antonio Barile, attached as Exhibit "G" to Defendant's Motion for Summary Judgment.) Even accepting the January, 1990 date as the accrual date of this cause of action, Plaintiff nevertheless did not file his complaint with the Pennsylvania Human Relations Commission/Equal Employment Opportunity Commission until November 20, 1991 and did not file this action until November 9, 1992—some 23 and 35 months, respectively, after the alleged act of discrimination occurred. Given Plaintiff's above-mentioned sworn testimony on this issue and our prior rulings with respect to the application of the tolling doctrines in this case, we now must find that both of Plaintiff's civil rights claims are time-barred. For these reasons, Defendant's motion for summary judgment on both counts of the plaintiff's amended complaint is hereby granted.[3]

An appropriate order follows.

### ORDER

AND NOW, this 26th day of July, 1993, upon consideration of Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiff's response thereto, it is hereby ORDERED that the said Motion be and is GRANTED and Judgment is hereby entered in favor of the Defendant, Sears, Roebuck and Co. and against the Plaintiff, Theodore Clark, in no amount.

---

**3.** Having so found, we see no need to address the remainder of those arguments which Defendant raises in support of its summary judgment motion.