**Judith SAMPLE, Plaintiff,**

v.

**KEYSTONE CARBON COMPANY, Defendant.**

**Civ. A. No. 90–285E.**

United States District Court, W.D. Pennsylvania.

March 4, 1992.

James D. McDonald, Jr., Daniel J. Pastore, The McDonald Group, Erie, Pa., for plaintiff.

Gary H. McQuone, Sidney Zonn, David B. Fawcett, III, Buchanan, Ingersoll, P.C., Pittsburgh, Pa., for defendant.

## OPINION

COHILL, Chief Judge.

We have before us plaintiff's "Motion to Amend Complaint" and the defendant's Memorandum in Opposition thereto. The plaintiff seeks to add claims for punitive and compensatory damages, and recovery of expert fees as well as a trial by jury on her Title VII sex discrimination claims. The basis for these additional claims are sections 102 and 107 of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991) (the "Act") enacted on November 21, 1991. The question before this court is whether these additional damages and jury trial allowed by the Act should apply retroactively to claims pending at the time the Act was signed into law.

We will grant the plaintiff's Motion to Amend Complaint.

## FACTS

In December, 1990 Judith Sample filed a complaint against her former employer, the Keystone Carbon Company, alleging that her immediate superior at Keystone, Jude Stauffer, made unwelcome sexual advances toward her which she rebuffed. Plaintiff contends that rejecting these advances caused her to be laid off and subsequently fired by Keystone.

Plaintiff's original complaint simply alleged that this conduct constituted sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* Plaintiff then requested and was granted permission to amend her complaint to include similar claims under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 955. This first amended complaint included claims for punitive damages and a demand for a jury trial under the PHRA. The plaintiff filed the current Motion to Amend Complaint on December 3, 1991.

## DISCUSSION

The issue before this court is one that has caused great confusion in the Federal District Courts in the little more than three months since the enactment of the Act. At least 10 different courts have ruled on this issue with an almost even split in the outcome. The confusion stems from three distinct areas.

First, the Act itself does not state whether it should be applied to cases pending on November 21, 1991; second, the legislative history of the Act is completely contradictory and therefore ambiguous regarding the retroactivity of the Act; last, the Supreme Court has recently conceded that it has presented the federal courts with two lines of conflicting precedent on retroactive application of newly enacted statutes. *See, Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Thus, those of us in the trial courts are left with little guidance as to the appropriate resolution of this issue.

### The Act

Section 402 of the 1991 Civil Rights Act states: "(a) In General.—Except as otherwise specifically provided, this Act and the amendments made by the Act shall take effect upon enactment." This language does not specify whether these amend-

ments apply to cases pending at the time of enactment. Nor does this language state that the Act should only apply to conduct that occurs after November 21, 1991. All the Act itself states is that the amendments would take effect the day the president signed the Act into law; it makes no overt statement regarding the retroactive application of the amendments to cases pending at the time of enactment.

### The Legislative History

The legislative history reflects and explains the ambiguity of the statute regarding retroactivity. It appears that there was considerable disagreement in the Senate over whether the Act should apply to pending cases. Even the two senators who sponsored the bill, Senators Danforth and Kennedy could not agree whether the act should apply retroactively.

Senator Danforth candidly stated that while Senator Kennedy agreed with most of the Act's interpretive memorandum, Senator Kennedy questioned "only the discussion in our memorandum that the original cosponsors, who are the authors of the effective date provision, do not intend for the bill to have any retroactive effect or application." 137 Cong.Rec. S15483 (Daily Ed. Oct. 30, 1991) Senator Danforth went on to state that his review of Supreme Court precedent favors the following interpretation of the statute:

> [I]n the absence of an explicit provision to the contrary, no new legislation is applied retroactively. Rather, new statutes are to be given prospective application only, unless Congress explicitly directs otherwise, which we have not done in this instance.

*Id.*

Senator Kennedy, a cosponsor of the Act in the Senate, stated that his understanding of the retroactive application of the bill was exactly the opposite of Senator Danforth's.

> I would also like to state, however, my understanding with regard to the bill's effective date ... It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enact-

ment. Ordinarily, courts in such cases apply newly enacted procedures and remedies to pending cases. That was the Supreme Court's holding in *Bradley v. School Bd.*, 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974).

> And where a new rule is merely a restoration of a prior rule that had been changed by the courts, the newly restored rule is often applied retroactively ... It was with that understanding that I agreed to be the principal Democratic sponsor of the Danforth–Kennedy substitute.

137 Cong.Rec. S15485 (Daily Ed. Oct. 30, 1991).

Thus, neither of the senators interpreted the effective date of the Act the same way. These contradictory interpretations lead this Court to the inescapable conclusion that there was no single "congressional intent" regarding the retroactive application of this Act. To the contrary, we believe that the ambiguous language of the bill is a result of congress' inability to reach a conclusion acceptable to a majority of Senators and Representatives about the retroactive application of these radical changes to Title VII. Thus, Congress compromised, intentionally passing ambiguous wording and leaving it to the courts to decide whether to apply the Act to cases pending at the time the bill was signed into law.

### The Case Law

Unfortunately, left to its own devices, the judiciary has not been anymore unified than the legislature. Of the cases reviewed for this opinion, which we believe include all of the cases that have been decided on this issue, approximately half have applied the Act retroactively and the other half have not. The confusion arises from two conflicting lines of Supreme Court precedent, coming from two primary cases—*Bradley v. School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

*Bradley* stands for the proposition that a court must apply the law in effect at the

time it renders its decision. Thus, the *Bradley* opinion stated that "Even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." *Bradley*, at 715, 94 S.Ct. at 2018. An important caveat to the *Bradley* rule is that the law will not be given retroactive effect if such application will result in a manifest injustice.

In *Bowen* the Supreme Court stated that "Retroactivity is not favored in the law ... congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen* at 208, 109 S.Ct. at 471. After quoting these passages from *Bradley* and *Bowen* in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Court recognized that a tension existed between these two cases. However, the Court declined to reconcile them and instead stated "under either view, where the congressional intent is clear, it governs." *Kaiser Aluminum*, at 837, 110 S.Ct. at 1577. As we stated before, the congressional intent on this issue is certainly not clear. Thus, we are left to choose between these two lines of Supreme Court precedent.

*Our Decision*

■ After reviewing the case law in this circuit and the facts of this case, we have decided to follow *Bradley* and apply these remedial amendments to Title VII in the instant case. Our review of cases decided by the Court of Appeals for the Third Circuit leads us to the conclusion that *Bradley* should be the rule of choice in this circuit. We reach this result in light of the fact that the Court of Appeals, in other situations, has repeatedly followed *Bradley* when faced with this retroactivity issue. *See, Baker v. Outboard Marine Corp.*, 595 F.2d 176, 182 (3d Cir.1979); *United States v. Gillen*, 599 F.2d 541, 543 (3d Cir.1979); *Wheeling–Pittsburgh Steel Corp. v. Interstate Commerce Com.*, 723 F.2d 346, 355 (3d Cir.1983); *Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 124 (3d Cir. 1984); *Hays and Co. v. Merrill Lynch,*

*Pierce, Fenner & Smith*, 885 F.2d 1149, 1151 (3d Cir.1989); *U.S. Healthcare Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir.1990) Thus, we will apply the *Bradley* test to determine whether the plaintiff should be allowed to amend her complaint.

■ Under *Bradley*, a presumption of retroactive application applies unless such application would result in "manifest injustice." In determining whether a manifest injustice will result from retroactive application, the *Bradley* court identified three factors which must be considered; the nature and identity of the parties, the rights affected, and the impact of the change in law on the pre-existing rights. We conclude, that after consideration of these factors, a manifest injustice would not result from the application of these amendments.

■ Under the first factor, the identity of the parties, *Bradley* suggests that the court look to whether the dispute is between private parties or public entities. If public entities are involved or the case concerns matters of great national concern, retroactive application is appropriate. While the dispute in the instant case is between two private parties, the issues involved are of national concern. The statute involved, the Civil Rights Act of 1991, is one that caused great national debate and involves issues and policies central to our democratic system. In addition, the subject matter of this case, sexual harassment, has recently received heightened attention and much public scrutiny. In light of these concerns, we find that the issues of this case are of sufficient national concern to justify retroactive application of these amendments.

The second and third factors, the nature of the rights affected and the impact on those rights, also support the conclusion that the amendments should be applied retroactively. Here, the plaintiff only requests compensatory and punitive damages and a jury trial. These changes do not impact the legality of the questioned conduct, only the level of damages involved. In addition, we have already allowed the plaintiff to add state law claims which en-

title her to a jury trial and punitive damages. The impact of the application of these amendments will not be severe because the plaintiff is already entitled to these remedies on the other counts of the complaint that are not governed by Title VII.

After considering the identities of the parties, the rights affected and the impact of the Act on those rights, we conclude that no manifest injustice will result from applying Sections 102 and 107 of the Civil Rights Act of 1991 to this case. Thus, we will grant the plaintiff's second Motion to Amend Complaint.

MOTION TO COMPEL

■ The plaintiff has also filed a Motion to Compel Discovery. Apparently, the defendant corporation objects to plaintiff's discovery requests regarding the worth of the company. These objections are premised on the theory that the information requested is not discoverable unless this Court rules that the plaintiff can recover punitive damages. Since we are allowing plaintiff to amend her complaint and seek punitive damages we find that the defendant should comply with the plaintiff's discovery requests regarding those damages.

However, we will not order the defendant to comply with all of the rather extensive discovery requested in the plaintiff's Third Request for Production of Documents. We cannot conclude that every demand contained in this request for document production is reasonably calculated to lead to discovery of admissible evidence. Thus, we will tailor the requested discovery such that it will comply with the Federal Rules of Evidence. We will order the defendant to comply only with document requests 2, 3, 4, 5, 11, and 12 contained in plaintiff's Third Request for Production of Documents. We find that document requests 6, 7, 8, 9, 10, 13, 14, 15 and 16 are unduly burdensome and will not require the defendant to supply them. The parties must keep this information confidential until time of trial.