**Elaine SAVKO, Plaintiff,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY, Larry Lutheran and Kathleen Radkoff, Defendants.**

**Civ. A. No. 87–2390.**

United States District Court,
W.D. Pennsylvania.

May 22, 1992.

---

Edward J. Feinstein, Pittsburgh, Pa., for plaintiff.

John J. Myers, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

LEWIS, District Judge.

On the eve of trial, defendants Port Authority of Allegheny County ("PAT"), Larry Lutheran and Kathleen Radkoff move this court to strike plaintiff Elaine Savko's demand for damages for emotional distress, and any evidence that may be offered in support of that demand (the "Motion"). The parties agree that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* did not permit damages for emotional distress at the time of plaintiff's original complaint. The parties further agree that the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071–1100 (the "1991 Act"), enacted on November 21, 1991, now makes such damages available to a Title VII plaintiff. Therefore, determination of the Motion entirely depends upon whether the relevant provisions of the 1991 Act apply retroactively to this case.

Rule 1 of the Federal Rules of Civil Procedure requires that I manage this court's caseload in a just and efficient manner. Therefore, I must decide the retroactivity question in this case, as well as in a number of others, notwithstanding the paucity of guidance provided by the language of the 1991 Act and its legislative history, and without the luxury of waiting for more definitive guidance from a higher court.

As more fully set forth below, I conclude that the 1991 Act does apply retroactively to plaintiff's suit. The Motion will be denied.

## BACKGROUND

Plaintiff began her career as a secretary for PAT in January of 1972 and received a promotion to Supervisor of Employment in January of 1980. Her employment was terminated on July 21, 1987. Plaintiff filed this lawsuit in November of 1987 asserting claims under Title VII and a pendent state claim for the alleged intentional infliction of emotional distress.

Her case encompasses three theories of discrimination. First, in the disparate treatment portion of her case, plaintiff alleges that she did not receive deserved promotions because of her gender. Instead, plaintiff claims, a male supervisor bypassed her for a less qualified male, defendant Larry Lutheran. Second, in the disparate impact portion of her case, plaintiff points to institutional policies at PAT and statistical studies which allegedly establish a pattern of gender discrimination in middle level management positions. Finally, plaintiff claims that PAT terminated her in retaliation for filing EEOC charges. According to plaintiff, defendant Kathleen Radkoff worked closely with defendant Lutheran to exclude her from functions and information necessary for effective job performance and promotion, and eventually to force her out of the organization entirely.

In an Order and Opinion issued on March 14, 1989, the Honorable Gerald J. Weber partially granted defendants' motion for summary judgment, thereby dismissing plaintiff's pendent state claim for damages based upon emotional distress. For more than two years, plaintiff proceeded under Title VII alone, without a claim for emotional distress.

On November 13, 1991, one week prior to the enactment of the 1991 Act, plaintiff filed an amended pretrial statement, including a claim for $30,000 in compensatory damages for emotional distress and attaching the expert report of Eugene Stevick, a clinical psychologist who has treated plaintiff for this alleged distress. Defendants filed the Motion in response to this eleventh-hour reintroduction of the emotional distress claim.

## DISCUSSION

### I. *Applicable Law Prior to the 1991 Act*

At the time that plaintiff filed this lawsuit, Title VII case law clearly prohibited the sort of psychic damages sought by plaintiff. Despite the silence of the United States Supreme Court on the issue, the United States Court of Appeals for the Third Circuit had held consistently that Title VII provided no remedy for infliction of emotional distress. *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 138–39 (3d Cir.1986); *Richerson v. Jones*, 551 F.2d 918, 926 (3d Cir.1977). These decisions reflect the traditional position that Title VII claims are equitable in character, making compensatory and punitive damages inappropriate. *Protos*, 797 F.2d at 138; *Richerson*, 551 F.2d at 927–28.

Prior to the 1991 Act, decisions by the district courts within the Third Circuit reflected the Court of Appeals' determination that damages for emotional distress were not available in Title VII cases. *See, e.g.*, *James v. International Business Machine Corp.*, 737 F.Supp. 1420, 1429 (E.D.Pa. 1990); *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151, 1154 (E.D.Pa.1984); and *Presseisen v. Swarthmore College*, 71 F.R.D. 34, 45–46 n. 12 (E.D.Pa.1976).

Consequently, if the 1991 Act is not retroactive, plaintiff's damage claim for the infliction of emotional distress, and any evidence offered in support thereof, must be excluded under the unequivocal case law of the Third Circuit.

### II. *Retroactivity of the 1991 Act*

In reported and unreported decisions, lengthy memoranda and brief orders, the trial courts of the federal judicial system have struggled over the past six months with the issue of the 1991 Act's retroactive effect. No clear trend has emerged. Although the three courts of appeals to consider the issue have ruled in favor of prospectively applying the 1991 Act, the Court of Appeals for the Third Circuit is not among them. *See Mozee v. American Commercial Marine Service Company*, 963 F.2d 929 (7th Cir.1992); *Fray v. Omaha World Herald Company*, 960 F.2d 1370 (8th Cir.1992); *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992). District courts are almost evenly divided. *See, e.g.*, Appendix of cases attached to the opinion in *Fray*. Even within a single district, such as the Western District of Pennsylvania, trial judges have split on the retroactivity question.[1] The retroactivity of the 1991 Act is, then, an open issue for this court.

The river of confusion flowing through the district court opinions on this issue emanates from a number of sources, including the ambiguous language of the 1991 Act, its partisan and unhelpful legislative history and executive pronouncements, and an unsuccessful earlier attempt to pass a comparable bill containing a provision mandating retroactivity. These will be discussed in the next section.

### A. *Indications of Legislative Intent*

Section 402(a) of the 1991 Act provides as follows with respect to retroactivity: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Although some courts have strained to find a clear and strong legislative intent encoded in this section—both for and against retroactivity—this court believes that the above-quoted language is susceptible to various reasonable interpretations. For example, before concluding that "Section 402(a) provides no guidance as to whether Congress intended the Act to apply prospectively or retroactively," the Court of

---

1. In this district, at least one judge has refused to apply the 1991 Act retroactively, while at least three have ruled in favor of retroactivity. *See Greenwood v. Stone*, No. 91–1795, 1992 WL 163601 (W.D.Pa. April 14, 1992) (Ziegler, J., for retroactivity); *Sample v. Keystone Carbon Company*, 786 F.Supp. 527 (W.D.Pa.1992) (Cohill, C.J., for retroactivity); *Wittman v. New England Mutual Life Insurance Company*, No. 90–1688 (W.D.Pa. February 13, 1992) (Diamond, J., for retroactivity); *Sinnovich v. Port Authority*, No. 89–1524, 1991 WL 348046 (W.D.Pa. December 31, 1991) (Standish, J., against retroactivity).

Appeals for the Seventh Circuit discussed an array of possibilities:

> [I]t might mean that the Act applies to cases filed after the enactment, it might mean that the Act applies to all proceedings beginning after the enactment, it might mean that the Act's provisions apply to all pending cases at any stage of the proceedings, or it might mean that the Act's procedural provisions apply to conduct that occurs after the enactment.

*Mozee v. American Commercial Marine Service Company,* 963 F.2d 929. Thus, the express language of § 402(a) does not shed light on Congress' intent with respect to the 1991 Act's retroactivity.

Two other sections of the 1991 Act expressly provide that they are to be applied only prospectively.[2] Plaintiff attempts to use these two sections to suggest that the remaining provisions of the 1991 Act, including those provisions applicable to her Title VII claim, are to be applied retroactively by implication. While the doctrine of *inclusio unius est exclusio alterius* might support plaintiff's argument, it hardly requires the result advocated by plaintiff.

Having failed to find an unequivocal mandate for or against retroactivity in the express language of the 1991 Act, this court must resort to a less preferred indicator of congressional intent, the legislative history. Despite an extensive congressional record concerning the retroactivity of the 1991 Act, the legislative history is less helpful and more confusing than the actual language of the Act. For example, Senator Edward Kennedy and Representative Donald Edwards, both original Democratic sponsors of the 1990 and 1991 House and Senate bills, supported retroactivity without reservation. Equally adamant that the 1991 Act should have only prospective application, Senator John Danforth, the principal Republican sponsor, staked out a position at the polar extreme from his colleagues across the aisle. Other legislators positioned themselves at various points along the continuum between Kennedy and Danforth. *Compare, e.g.,* 137 Cong.Rec. S15,483, S15,485 (daily ed. Oct. 30, 1991) (statement of and interpretative memorandum submitted by Senator Danforth); *Id.* at S15,478 (section-by-section analysis submitted by Senator Dole); *Id.* at S15,953 (daily ed. Nov. 5, 1991) (document submitted by Senator Dole); *Id.* at S15,966 (statements of Senators Durenberger and Simpson) *with* 137 Cong.Rec. S15,485 (daily ed. Oct. 30, 1991) (statement of Senator Kennedy); *Id.* at S15,963 (daily ed. Nov. 5, 1991) (statement of and exhibit submitted by Senator Kennedy); 137 Cong.Rec. H9,530 (daily ed. Nov. 7, 1991) (statement by Representative Edwards).

Some have argued that the legislative history of the 1991 Act's predecessor, the Civil Rights Act of 1990, lends support to a prospective interpretation of the 1991 Act. The 1990 Act was explicitly retroactive. S.2104, 101st Cong. 1st Sess. § 15 (1990). President Bush stated that he vetoed the 1990 Act in part because of its "unfair retroactivity rules." President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990, 26 Weekly Comp.Pres.Doc. 1632, 1634 (October 22, 1990). Congress failed to override President Bush's veto of the 1990 Act. Given the pitched political battle leading to the passage of the 1991 Act and the garbled state of the congressional record, this court does not believe that the failure to include an explicit retroactivity provision may be read as an indication of anything.

Some proponents of a prospective application of the 1991 Act argue that absent a clear legislative directive, the court should give great deference to various executive branch pronouncements on the issue of retroactivity. At the signing ceremony for the 1991 Act, President Bush directed that Senator Robert Dole's opinion that the Act not be given retroactive effect be "treated as authoritative interpretive guidance" by

---

**2.** Section 109 of the 1991 Act states that the amendments made to this section "shall not apply with respect to conduct occurring before the date of the enactment of this act." Section 402(b) of the 1991 Act states that "nothing in this act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983."

all officials in the executive branch of government. *See* BNA Daily Labor Report No. 226, D–1, November 22, 1991. The EEOC and the Department of Justice, both entities within the executive branch, were bound by the President's directive and have dutifully followed it.

On December 27, 1991, the EEOC issued Notice 915.002 "Policy Guidance on Application of Damages Provisions of the Civil Rights Act of 1991 to Pending Charges and Pre–Act Conduct." The EEOC concluded that it would not seek damages under the 1991 Act for events occurring prior to its effective date. This court recognizes that the construction of a statute by the administrative agency charged with its execution is normally given a measure of deference. *Chevron USA v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). This court is, however, also charged with a duty to reject any administrative interpretation which is not reasonable. *EEOC v. Arabian Oil Company*, —— U.S. ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991) (rejecting EEOC's view with respect to the extraterritorial effect of Title VII); *General Electric Company v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (rejecting EEOC guidelines on pregnancy discrimination).

In keeping with the judicial independence reflected in the cases cited above, I reject EEOC Policy Guidance 915.002. In light of President Bush's directive, and for the reasons set forth in the remainder of this opinion, I do not believe that the EEOC has set forth a reasonable or well-supported position. I do not consider it to be binding or persuasive.[3]

### B. *The Interpretive Presumption*

In cases in which Congress has directly and precisely manifested its intent in either statutory language or legislative history, there is, of course, no need to apply judicially-created presumptions. That is, whether the courts favor prospectivity or retroactivity is irrelevant when Congress has made itself clear. On the other hand, when a court is faced with interpreting a law or legislative record that fails to evidence a unified purpose, such as the 1991 Act, the role of the presumption becomes critical. Absent some rule of construction, the language of the 1991 Act and its legislative history with respect to retroactivity would be nothing more than a judicial Rorschach test: a series of random ink blots upon which the reviewing judge would be free to impose his or her own beliefs and values concerning the civil rights at issue. It is, therefore, under circumstances such as those present in this case, that a presumption in favor of either retroactivity or prospectivity can act as a meaningful check on the unbridled discretion of the court. Similarly, in cases of legislative ambiguity the effect of a presumption often may be outcome-determinative.

Unfortunately, the United States Supreme Court has not settled the general question of whether, absent clear congressional intent, a legislative enactment should be presumed to be prospective or retroactive. An unabated tension, if not an outright conflict, exists between the presumptions contained in two Supreme Court cases, in fact. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (prospectivity favored); *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (retroactivity favored). While choosing either the *Bradley* or *Bowen* presumption does not guarantee that the favored result will obtain on any particular set of facts, the reality is that the large majority of the courts which have applied the *Bradley* analysis have found the 1991 Act to be retroactive and, conversely, courts applying *Bowen* have typically given the Act prospective effect only.

In *Bradley*, a unanimous court held that Section 718 of the Emergency School Aid Act, which authorized the award of attorneys' fees in a school desegregation case, applied retroactively to a case pending be-

---

**3.** The brief filed by the Department of Justice in the *Van Meter* litigation, attached to defendants' brief in this case, is of even less value.

fore its enactment. In reaching that result, the court enunciated a test which requires that a new statute be applied to all cases pending on the date of its enactment unless there is a statutory directive or legislative history to the contrary or manifest injustice would result.

The Court of Appeals for the Third Circuit has adopted the *Bradley* presumption in favor of retroactivity and has consistently applied it to a number of statutory contexts. *See, e.g., Wheeling–Pittsburgh Steel Company v. Interstate Commerce Commission*, 723 F.2d 346, 355 (3d Cir. 1983); *Baker v. Outboard Marine Corp.*, 595 F.2d 176, 182 (3d Cir.1979); *United States v. Gillen*, 599 F.2d 541, 543 (3d Cir.1979).

Fourteen years after *Bradley*, the Supreme Court once again addressed the retroactivity issue in *Bowen*. The court took this opportunity to revitalize the hoary principle that "[r]etroactivity is not favored by the law." *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471. The *Bowen* court went on to state that, "[t]hus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.*

In 1990, the Supreme Court recognized, but did not resolve, the "apparent tension" between the *Bowen* and *Bradley* opinions. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). The plurality opinion by Justice O'Connor avoided the *Bradley/Bowen* conflict by finding a clear congressional intent governing the interpretation of the statute at issue. *Kaiser*, 494 U.S. at 837, 110 S.Ct. at 1577.

Justice Scalia's concurring opinion in *Kaiser*, in which no other Justice joined, met the conflict head on, resolving it in favor of *Bowen*. Justice Scalia presents a persuasive case for a presumption in favor of prospectivity. His concurring opinion

firmly roots *Bowen* in the American legal tradition, and clearly enunciates the fairness and simplicity of application to be gained by a prospective approach to statutory construction.[4]

Notwithstanding the apparent trend toward the prospective position enunciated in Judge Scalia's *Kaiser* concurrence, the Court of Appeals for the Third Circuit has steadfastly clung to the *Bradley* presumption. Despite more than one-half dozen opportunities to do so, the Court of Appeals for the Third Circuit has not once cited *Bowen*, either favorably or unfavorably. To the contrary, it continues to cite *Bradley* as the rule of the Third Circuit, and has continued to apply it in a number of different contexts. *United States v. Jacobs*, 919 F.2d 10, 11 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991) (citing *Bradley* in the criminal context as the "general rule, as developed at common law"); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990) (applying a *Bradley* analysis and finding that new substantive provisions of § 43(a) of the Lanham Act should be applied retroactively to a pending case); *Doe v. City of Butler, PA*, 892 F.2d 315, 323 (3d Cir.1989) (applying *Bradley* analysis without comment and holding that the amended provisions of Title VIII should be applied retroactively); *Air–Shields, Inc. v. Fullam*, 891 F.2d 63, 65 (3d Cir.1989) (applying a *Bradley* analysis and holding that the district court erred by not applying the new removal provisions of the Judicial Improvements Act to a pending case); *Hays and Co. v. Merrill Lynch*, 885 F.2d 1149, 1151 (3d Cir.1989) (retroactivity found when *Bradley* applied to the Judicial Improvements Act).

Therefore, putting aside personal predilections and national trends, the doctrine of

---

**4.** A number of courts have adopted Justice Scalia's concurrence in *Kaiser*. Notably, the Scalia concurrence was adopted in *Alpo Pet Foods, Inc. v. Ralston–Purina Co.*, 913 F.2d 958, 963 n. 6 (D.C.Cir.1990), an opinion authored by Judge, now Justice, Clarence Thomas. Faced with this trend towards prospectivity, a few trial courts in

the Third Circuit have chosen to apply the *Bowen* test to the Civil Rights Act of 1991 (although each of these courts was also careful to apply *Bradley* as well). *Kimble v. DPCE, Inc.*, 784 F.Supp. 250 (E.D.Pa.1992); *Tyree v. Riley*, 783 F.Supp. 877 (D.N.J.1992).

*stare decisis* requires that I apply *Bradley* and its progeny to the 1991 Act.

### C. *Application of the Presumption*

As stated earlier, the *Bradley* presumption of retroactivity does not apply if there is clear legislative intent to the contrary or if retroactivity would result in a manifest injustice. Section II.A. of this opinion explains why this court has concluded that there is no clear legislative intent with respect to the retroactivity of the 1991 Act. Therefore, the *Bradley* presumption in favor of retroactivity will apply in this case unless it would result in a manifest injustice.

The *Bradley* court identified three factors which must be considered when determining whether a manifest injustice will result from the retroactive application of a statute: (i) the nature and identity of the parties; (ii) the rights affected; and (iii) the impact of the change in law on the preexisting rights. 416 U.S. at 717, 94 S.Ct. at 2019. After considering these factors, I conclude that a manifest injustice would not result from the retroactive application to this case of the relevant changes in Title VII law under the 1991 Act.

Under the first *Bradley* factor, the court should determine whether this litigation is essentially private or public. In making this determination, the court must weigh the nature of both the parties and the issues to be decided. If public entities are involved or the case centers on a matter of great national concern, retroactive application is appropriate. Like the school board in *Bradley*, this case involves a public entity defendant. PAT is a public authority receiving taxpayer money. The public has long had an interest in knowing that its limited funds are not being spent to further a pattern of employment discrimination based on gender bias. Therefore, the nature of the parties alone elevates this above the "routine private lawsuit." *Bradley*,

416 U.S. at 718, 94 S.Ct. at 2019. In addition, the 1991 Act, like the Civil Rights Act of 1964, is intended to promote equality in our nation and provide a remedy for discrimination. Sex discrimination in the work place, in particular, has received considerable national attention during the past year. Thus, I find that the nature of the issues in this case justify retroactive application of the relevant amendments.

The second *Bradley* factor for the court to consider is the nature of the rights involved. The question here is whether application of the new law "would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. It is hard to imagine what matured right of the defendants may be affected by the 1991 Act's expansion of Title VII remedies in this case. Plaintiff merely seeks to collect the full range of remedies now available under the 1991 Act to make her whole. Certainly defendants did not have a matured "right" to expect that their discrimination, if proved, would result in a certain set of remedies. Because the relevant changes to the law in the 1991 Act affect only the level of damages rather than the legality of the questioned conduct, it is entirely fair to apply these changes to this pending matter.

The third *Bradley* factor requires the court to weigh the impact of the relevant change in law upon the preexisting rights of the defendants. Put differently, this factor concerns "the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. Here again, there is no unfair surprise to the defendants. With respect to damages, the only change in the trial of this case necessitated by the new law will be the nature of the evidence presented by the plaintiff.[5] Un-

---

**5.** As an aside, plaintiff has raised the specter of the 1991 Act's affecting this case in two ways in addition to her damages claim. *See* plaintiff's brief at 2. Under the 1991 Act, the term "business necessity" is defined as it was, and the burdens of proof placed on litigants in disparate

impact cases apply as they did, before the Supreme Court's decision in *Wards Cove Packing v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Similarly, an employment action may now violate the 1991 Act even though the same action would have been taken

der both the old law and the new law, PAT had every reason to expect that its alleged behavior would result in a federal lawsuit.

After considering the nature of this litigation, the rights affected and the impact of the 1991 Act on those rights, I conclude that no manifest injustice will result if plaintiff is permitted to seek those compensatory damages allowed by § 102 of the 1991 Act.[6]

absent a discriminatory motive. This is a legislative overruling of the Supreme Court's decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

I need not address these issues at this juncture, however, as they are not properly before me. At the appropriate time, I will determine whether the retroactive application of these changes in the law would work a manifest injustice so as to result in their only being applied prospectively.

**6.** In her brief in opposition to the Motion, plaintiff raises the possibility that she might also seek punitive damages under the amended version of

Title VII. Putting aside the issue of whether PAT is a "government agency" within the meaning of § 102(b)(1) of the 1991 Act, in the absence of a clear congressional directive to do so, this court will not apply punitive damages retroactively because the purpose of deterrence would not be served. In addition, the defendants' lack of notice that damages of a penal nature might be imposed would constitute a "manifest injustice" under *Bradley.*

For purposes of clarity at trial, it should also be noted that disparate impact cases are expressly excluded from the expanded compensatory damage provisions found in § 102 of the 1991 Act.