**Tejhban S. SAINI, Plaintiff,**

v.

**BLOOMSBURG UNIVERSITY FACULTY, et al.,
Defendants.**

**No. 1:CV:92–1630.**

United States District Court,
M.D. Pennsylvania.

June 30, 1993.

---

884

Melville Graham Merlin Walwyn, Melville G.M. Walwyn, P.C., Harrisburg, PA, for plaintiff.

James L. Cowden, Strokoff & Cowden, Harrisburg, PA, for defendants.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Tejhban S. Saini, a professor at Bloomsburg University (BU), filed this Title VII action[1] alleging the violation of his civil rights in connection with an election of officers for the Bloomsburg University Faculty Association (BUFA or the union) held in April, 1991.[2] Union officers receive no salary or other remuneration.

Plaintiff's discrimination claims are based on alleged improprieties in the way in which the election was conducted and when it was held. Plaintiff is an Asian Indian, and alleges that he was discriminated against on the basis of his race and national origin.

Plaintiff filed this action against the union and James H. Dalton, Jr., Ph.D., Chairman of the Union Nomination and Elections Committee alleging claims under: 1) Title VII;

---

1. 42 U.S.C. §§ 2000e—2000e–17.

2. BUFA is a chapter of the Association of Pennsylvania State College and University Faculties which is also named as a defendant.

and 2) sections 1981, 1983, 1985, and 1988 for the alleged violation of his Fourteenth Amendment rights.

Defendants have moved for summary judgment (Record Document No. 10) on all claims alleged. No opposing brief or other responsive documents have been filed by plaintiff. Local Rule 401.6 requires a party opposing any motion to file a responsive brief, together with other opposition papers within fifteen days after service of the movant's brief. Any party who fails to comply with this rule is deemed not to oppose the motion. We, therefore, deem defendants' summary judgment motion unopposed and issue our ruling accordingly.

We have considered defendants' motion on its merits, and find the arguments made to be well taken. For the reasons discussed below, summary judgment will be entered in defendants' favor on all claims.

There is also before the court a motion by plaintiff for leave to file an amended complaint (Record Document No. 17). Plaintiff seeks to amend his complaint to allege an additional claim for violation of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401, *et seq.* Plaintiff's motion will be denied as untimely and unduly prejudicial to the defendants.

### Motion for summary judgment standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, an on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case neces-

sarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 323 and 325, 106 S.Ct. at 2553 and 2554.

■ Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the non-moving party. *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

### Undisputed facts

■ Local Rule 401.4 requires that a statement of undisputed material facts accompany all motions for summary judgment. It further requires that the party opposing the motion file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [from the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." Local Rule 401.4 concludes by cautioning parties that: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted

unless controverted by the statement required to be served by the opposing party."

Defendants filed a statement of material facts in support of their motion for summary judgment. (Record Document No. 10) Although attached certificates of service indicate that plaintiff was served with defendant's motion, brief, statement of undisputed facts, and supporting documents (Record Document No. 11), plaintiff did not file an opposition brief or a response to defendants' statement of material facts. Based on that omission, all facts in defendant's statement are deemed admitted pursuant to Local Rule 401. See: *Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565, 567–68 (7th Cir.1992) (Seventh Circuit upheld enforcement of a similar rule adopted by Northern District of Illinois) and *Kelly v. United States*, 924 F.2d 355, 358–59 (1st Cir.1991) (First Circuit upheld enforcement of a similar rule adopted by the District of Massachusetts).

The facts stated by defendant in its statement establish the following: Plaintiff submitted his name as a candidate for vice-president.[3] No other names were submitted for that office by the close of nominations on March 18, 1991. All of the candidates were self-nominated. There were no candidates for several offices. Dalton announced the shortage of candidates at the next membership meeting. Pursuant to a motion from the floor, the members voted to re-open nominations until April 3, 1991. Nominations were re-opened for all offices not just those for which no candidates were nominated.

A Bloomsburg professor, William Acierno, submitted his name as a candidate for vice-president. Plaintiff complained that it was improper to re-open nominations for offices which already had candidates. After checking with the union's central office in Harrisburg, BUFA agreed with Saini. Acierno was asked to withdraw his nomination and did so.

The election was held April 11 and 12, 1991. Union by-laws permit votes to be cast for write-in candidates. A total of one-hundred-forty-two votes were cast in the vice-presidential race. Of those, Saini received 65 votes. Acierno received 48 votes as a write-in candidate. Twenty-nine votes were cast in favor of other write-in candidates. Since no one candidate received a majority of the votes cast, union by-laws required a run-off election between the two candidates with the highest number of votes, Acierno and Saini.

Plaintiff boycotted the run-off election in protest, taking the position that union by-laws did not authorize a run-off election and that he should be declared the winner. He stated his views on the subject in an open letter to the Bloomsburg faculty sent out before the run-off election. The election was held over plaintiff's objection. Acierno received 81 votes and was declared the winner. Saini received 29 votes. Plaintiff alleges that BUFA and Dalton discriminated against him in conducting the election in the manner that they did.

Plaintiff also complains about defendants' failure to hold the election on or before March 31, 1991, as specified in the union by-laws. (Plaintiff's complaint, para. 15). Defendants concede that the 1991 election was not conducted before April 1, 1991, as the by-laws require, and add that the same is true of the elections held in 1985, 1987 and 1989. Saini was not a candidate in any of those elections.

### Application of Title VII to BUFA elections

■ BUFA is an employee organization certified under the Pennsylvania Public Employe Relation Act, 43 Pa.Stat.Ann. §§ 1101.-101–1101.2301, to represent faculty members of Bloomsburg University and other Pennsylvania state-owned universities. BUFA is a private entity, not an arm of state government, and as such can be regulated by Congress only through the Commerce Clause of the United States Constitution.

Title VII makes it an "unlawful employment practice" for a labor organization "to exclude or expel from its membership, or otherwise discriminate against, any individual because of his race, color ... or national origin." 42 U.S.C. § 2000e–2. In keeping with the constitutional basis for Congress'

---

**3.** Most facts related here are taken from defendant's unrebutted statement of material facts (Record Document No. 10). Those not stated there are taken from plaintiff's complaint.

exercise of authority over private organizations, Title VII applies only to labor organizations which are "engaged in an industry affecting commerce." 42 U.S.C. § 2000e(d). With exceptions which do not apply here, only those organizations which either 1) maintain or operate a hiring hall or a hiring office which procures employees or employment opportunities, or 2) have fifteen or more members *and* represent employees of an employer which is engaged in an industry affecting commerce fall into that category. 42 U.S.C. § 2000e(e).

The burden of demonstrating effect on interstate commerce is on the plaintiff invoking Title VII jurisdiction. *Equal Employment Opportunity Commission v. California Teachers Association*, 534 F.Supp. 209, 217 (N.D.Calif.1982). In this case, there is no allegation, and no proof, that BUFA maintains or operates a hiring hall or hiring office. Nor is there any allegation, or any proof, that BUFA members, who are faculty members of Pennsylvania state-owned universities, are engaged in an industry which affects interstate commerce. Plaintiff's Title VII claim is dismissable on that basis alone.

### Title VII claim

Plaintiff's Title VII claim fails on another ground as well—his failure to produce any evidence, direct or circumstantial, of discriminatory animus on the part of the defendants.

Plaintiff is alleging disparate treatment on the part of the BUFA and Dalton on the basis of his nationality and race. Plaintiff is an Asian Indian. A Title VII plaintiff has the initial burden of establishing a *prima facie* case by showing 1) that he is within the protected class, i.e. a member of a protected race or nationality; 2) that he was qualified for the position sought; and 3) that he did not get the position. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff establishes those elements, the burden then shifts to the defendant to state a legitimate, nondiscriminatory reason for the decisions made.

If such reasons are stated, the burden then shifts back to the plaintiff to demonstrate that the discrimination did occur. Plaintiff's burden may be carried indirectly by demonstrating that the reasons given are a pretext for discriminatory motives or by producing direct or circumstantial evidence of a discriminatory animus. *Id.*

In its most recent decision on the *Burdine/McDonnell Douglas* burden-shifting mechanism, *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the United States Supreme Court explained and refined application of the ultimate stage in which a decision is reached either for or against the plaintiff, stating:

> If ... the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant ... The presumption ... simply drops out of the picture ... [and] the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven "that the defendant intentionally discriminated against [him]" because of his race ... The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.... [R]ejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination ... But ... rejection of the defendant's proffered reasons [does not] compel ... judgment for the plaintiff ...

*Id.* at ——, 113 S.Ct. at 2749 (Citations and footnote omitted.)

The allegations of plaintiff's complaint establish a *prima facie* case. However, the undisputed facts of record establish that defendants did not act with discriminatory motives and that the way in which the election and nominations were conducted was done in a neutral fashion without the intent, or effect, of discriminating against plaintiff. There are no facts of record which suggest that plaintiff was treated any differently than any other

candidate for BUFA office. Far from treating him unfairly or in violation of union by-laws, the undisputed facts establish that his concerns and objections to BUFA's administrators' alleged failure to follow prescribed procedures were, in fact, heeded and followed. When plaintiff protested the re-opening of nominations for the vice-presidency as a violation of union by-laws, BUFA consulted the central office, found that plaintiff's interpretation was correct and requested Acierno's withdrawal.

Undisputed facts indicate that decisions regarding the 1991 election were made without regard to plaintiff's race or nationality and were made in a good faith effort to adhere to union by-laws.

Defendants are, therefore, entitled to summary judgment on plaintiff's Title VII claim.

### Civil Rights Claims

■ Plaintiff's civil rights claims fail for the same reason. Again, there is no evidence to support plaintiff's allegations of discrimination or failure to accord him equal protection under the Fourteenth Amendment. The undisputed facts establish that BUFA and Dalton conducted the 1991 election fairly and even handedly. There is nothing in the record to suggest that plaintiff was treated any differently than any other candidate for BUFA office or was not accorded any right or privilege due him as a BUFA member running for elective office.

■ Plaintiff's section 1983 and 1985 claims fail on another ground as well. An essential element of all section 1983 claims is proof that the defendants are state actors or conspired with state actors to deprive the plaintiff of rights, privileges, or immunities guaranteed by the Constitution or the laws of the United States. *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) and *Pokrandt v. Shields*, 773 F.Supp. 758, 765 (E.D.Pa.1991). Here, there is no proof that BUFA or Dalton qualify as state actors.

Although plaintiff alleges a section 1981 claim in the introductory paragraphs of his complaint, no facts are alleged which even remotely support such a claim. Before the 1991 amendments to the Civil Rights Act, section 1981[4] applied only to racial discrimination in the making or enforcement of private contracts and, the United States Supreme Court has held, "cannot be construed as a general proscription of racial discrimination in all aspects of contract relations ..." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989), *abrogated* by Civil Rights Act of 1991.

The 1991 amendments expanded the scope of section 1981 to encompass claims relating to the right to make and enforce contracts, sue, be parties to a lawsuit, give evidence, and enjoy "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens". 42 U.S.C. § 1981, as amended.

The 1991 Civil Rights Act (the Act) became effective November 21, 1991. The election about which plaintiff complains was conducted in April, 1991. The statute, as amended, therefore applies to his claims only if the 1991 amendments are given retroactive effect.

Retroactivity of the 1991 Act is an open question which has yet to be decided by the

---

4. Prior to its amendment, section 1981 provided, in relevant part:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens ...

42 U.S.C. § 1981.

As amended, it now provides:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and

shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981, as amended.

United States Supreme Court. Compare: *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) and *Bowen v. Georgetown University,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) with *Kaiser Aluminum v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). The retroactivity issue has plagued the federal courts since the Act's passage. Despite innumerable decisions on the issue by federal courts across the country, no clear consensus has emerged. Not only are the circuits divided, but, in many instances, district courts within a circuit are divided on the issue. See: *Savko v. Port Authority of Allegheny County,* 800 F.Supp. 268, 270 (W.D.Pa.1992) and *Aiken v. Bucks Association for Retarded Citizens, Inc.,* 799 F.Supp. 522, 525–34 (E.D.Pa. 1992) and for discussions of conflicting authority on this issue. There is no Third Circuit authority on point, nor even a consensus among the courts of this district. *Savko, supra* at 270 n. 1.

Although the Supreme Court currently has a case before it which would resolve the retroactivity issue, *Landgraf v. USI Film Products,* 1993 WL 42997 (U.S.), 61 U.S.L.W. 3371,[5] and a decision is expected to issue before the close of the current term, no decision has yet been announced.

In any event, we need not resolve the retroactivity issue to decide defendants' motion. As stated above, plaintiff has not come forward with any evidence to substantiate allegations that he was discriminated against on the basis of race or national origin by the way in which the 1991 election of BUFA officers was conducted. Plaintiff does not even allege the existence of a contractual relationship or any other basis for the section 1981 claim asserted. All of his claims pertain to the manner in which the election of BUFA officers was conducted. Such claims do not give rise to a section 1981 claim under either the pre–1991 or post–1991 version of the statute.

Based on all of the foregoing, we will grant defendant's motion for summary judgment on all claims.

### Plaintiff's motion for leave to amend

Rather than respond to the substantive matters raised by defendants' motion for summary judgment, plaintiff has filed a belated motion for leave to amend his complaint to add an additional count. Fed.R.Civ.P. 15(a). Plaintiff's motion was not filed until June 15, 1993, long after defendants filed and briefed their summary judgment motion. Plaintiff filed an amended motion June 17, 1993. Plaintiff seeks to add a count to his complaint alleging the violation of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401, *et seq.* Plaintiff states no justification in his motion or amended motion for the belated filing of this new claim.

■ Although Rule 15(a) provides that leave of court to amend the pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a), the right to amend a complaint is not without limits. Leave should be freely given only in the absence of any apparent or declared reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1982).

■ This case is currently scheduled for trial in September, 1993. Discovery was to have been concluded by June 1, 1993 and all dispositive motions filed on or before June 15, 1993. Permitting plaintiff to amend his complaint to add an entirely new claim at this late date would require us, in fairness to the defendants, to re-open discovery, re-open the period for filing dispositive motions, and delay the scheduled trial date. This would be grossly unfair to the defendants, particularly since plaintiff offers no justification for failing to assert his LMRDA claim in the first instance.

---

**5.** The Fifth Circuit Court of Appeals ruled in *Landgraf v. USI Film Products,* 968 F.2d 427, 432–33 (5th Cir.1992), that the 1991 Civil Rights Act does not apply to conduct occurring prior to its effective date.

**890**

Plaintiff's motion will be denied as untimely, and as unduly prejudicial to the defendants. See: *Mulcahy v. Fiamingo,* No. 87–1278, slip op. at 3–4 (M.D.Pa. Feb. 10, 1989), (LEXIS, 1989 U.S.Dist. Lexis 2193), (Kosik, J.) and *Kurz v. Mairone,* No. 86–5587, slip op. at 2–3, 1988 WL 132204 (E.D.Pa. Dec. 12, 1988). As noted above, plaintiff filed no opposition papers to defendants' summary judgment motion. Rather than defend the viability of the claims he asserted originally and on the basis of which this case has been litigated for the past seven months,[6] plaintiff now seeks to "shift horses in mid-stream" and assert an entirely different claim. His belated attempt would be unduly prejudicial to the defendants, who have conducted discovery and litigated this entire matter on the assumption that the claims in this case are those asserted in the original complaint, only to find out at the eleventh hour that plaintiff intends to introduce an entirely different claim. There is no excuse or justification for plaintiff's attempt to fend off summary judgment with a newly asserted claim, and we will deny his motion as untimely, lacking in good faith, and unduly prejudicial to the defendants.

### *ORDER*

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment (Record Document No. 10) is granted.

2. Judgment is entered against plaintiff and in favor of both defendants on all claims.

3. Plaintiff's motion for leave to file an amended complaint (Record Document No. 16) and plaintiff's amended motion (Record Document No. 17) are denied.

4. The Clerk of Court is directed to close this file.

---

6. Plaintiff's complaint was filed November 16,   1992.